UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rick Ferrari,                                                    Civil No. 14-2956 (MJD/FLN)
*on behalf of himself and*
*all others similarly situated*

                 Plaintiff,                          **REPORT AND**
                                                     **RECOMMENDATION**

        v.

Best Buy Co., Inc. et al.,

                 Defendants.

_____

Daniel Shulman and Richard Landon for Plaintiff.
Stephen Safranski and Katherine Barrett Wiik for Defendants.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on
Defendants Best Buy Co., Inc., BestBuy Stores, L.P., and Bestbuy.com, LLC's motion to dismiss
(ECF No. 16). This matter was referred to the undersigned for Report and Recommendation pursuant
to 28 U.S.C. § 636 and Local Rule 72.1. Order, ECF No. 30. For the reasons set forth below, the
Court recommends that Defendants' motion to dismiss be **GRANTED in part** and **DENIED in
part**.

## I. FINDINGS OF FACT

**A.      Introduction**

        Plaintiff Rick Ferrari, a resident of Massachusetts, alleges that Defendants Best Buy Co.,
Inc., BestBuy Stores, L.P., and Bestbuy.com, LLC (collectively, "Best Buy") are falsely advertising
and labeling certain Insignia-brand[1] LCD televisions as "LED TVs." First Am. Compl. ¶¶ 2–3, ECF

_____

[1]

        "Insignia" is Best Buy's in-house brand of electronics.

No. 34. This, according to Plaintiff, allows Best Buy to sell its televisions at an "unjustified price premium," because consumers are misled into believing "they are purchasing a different, improved, and technologically advanced class or species of television." Pl.'s Mem. in Opp'n to Mot. to Dismiss 1, ECF No. 35; *see also* ECF No. 34 ¶ 4. Plaintiff alleges, on behalf of himself and all others similarly situated, that Best Buy's conduct violates both Minnesota and Massachusetts consumer protection statutes. ECF No. 35 at 1.

**B.      History of television display technology**

According to Plaintiff,[2] the picture on a television's display was originally created by using cathode ray tube ("CRT") technology. ECF No. 34 ¶ 20. To produce an image on a CRT television, a cathode generates electrons, which are then focused into a ray that travels through a vacuum glass tube and strikes a flat glass screen at the other end of the tube. *Id.* ¶ 21. This screen is coated with phosphor, which glows and generates an image when struck by the electron beam. *Id.*

Plaintiff states that in the early 2000s, television manufacturers began introducing flat panel, plasma display televisions to the mainstream consumer market. *Id.* ¶ 28. These televisions were thin and light enough to be mounted directly on a wall. *Id.* Plasma televisions use plasma displays, which are composed of millions of small pixels that contain electrically charged ionized gases, to generate the screen image. *Id.* ¶ 29. Each pixel is made up of three separate subpixel cells with different colored phosphors. *Id.* ¶ 30. When electricity is introduced to the plasma, the atoms become unstable and electrons and particles within the plasma begin to collide, releasing photons of ultraviolet

---

[2]      This section pertaining to the history of television display technology is derived from the information provided by Plaintiff's Amended Complaint. The Court includes this information for purposes of deciding Best Buy's motion to dismiss, but makes no findings as to the scientific accuracy of the technology described by Plaintiff.

energy. *Id.* All of the pixels acting together generate the screen image. *Id.* The pixels used in plasma displays do not require a separate light source; the image and all of the colors are generated by the interaction between the electrically charged ionized gases and the phosphor in the cells.

In the early to mid-2000s, television manufacturers began introducing flat panel, liquid crystal display ("LCD") televisions to compete with plasma televisions. *Id.* ¶ 33. Like plasma televisions, LCD televisions are flat, reasonably light, and can be mounted on a wall. *Id.* However, LCD televisions utilize different display technology compared to plasma televisions; namely, LCD technology. *Id.* To form a liquid crystal display, a thin layer of a liquid crystalline substance is sandwiched between two substrates, which are sheets of glass or plastic to which a grid of electrodes have been applied. *Id.* ¶ 34. A vertical polarizing film is applied to the LCD's rear substrate, while patterned red, green, and blue color filters, as well as a horizontal polarizing film, are applied to the front substrate. *Id.* To generate the screen image, the liquid crystal display is lit by a separate light source because, unlike plasma displays, liquid crystals do not emit light themselves. *Id.*

An LCD television generates screen images by controlling the amount of light that passes through the liquid crystal display and strikes the color filters. *Id.* ¶ 35. Any white light source can be used to generate the screen image. *Id.* ¶ 36. Initially, all manufacturers of LCD televisions primarily used cold cathode fluorescent lights ("CCFLs") as the light source. *Id.* ¶ 37. Television manufacturers, however, continued to experiment with light sources other than CCFLs, including by using light emitting diodes ("LEDs") to light the liquid crystal display ("LED-lit LCD televisions"). *Id.* ¶ 38. However, according to Plaintiff, the introduction of a different light source did not change the manner in which the LCD panels and LCD televisions generated the screen image. *Id.*

Best Buy introduced its first Insignia-brand LED-lit LCD television in 2009. *Id.* ¶ 39. As these LED-lit LCD televisions have become less expensive to manufacture, they have now emerged as the most popular flat-screen technology, almost completely displacing the previous generation of LCD televisions (i.e., CCFL-lit LCD televisions) within the United States. *Id.* ¶¶ 16, 39–40. Indeed, according to Plaintiff, Best Buy no longer sells Insignia televisions that use the older CCFL backlighting technology. *Id.* ¶ 50 n.1.

More recently, television manufacturers have started producing televisions that use actual LED displays, rather than LCD displays. *Id.* ¶ 54. These LED displays are self-illuminating, require no independent light source, and do not contain liquid crystal technology. *Id.* These televisions are known as organic LED televisions or "OLED TVs." While Best Buy does not sell an Insignia-brand OLED TV, other manufacturers sell OLED TVs at prices significantly higher than LED-lit LCD televisions. *Id.* ¶ 55 (referencing an LG 55" OLED for $5,999.98 as compared to an Insignia 48" LED-lit LCD TV for $399.99).

C.      **Best Buy's marketing of LCD televisions**

Plaintiff's Amended Complaint alleges that when LCD televisions were first introduced into the market, they were universally marketed by all television manufacturers as simply "LCD TVs," just as plasma display televisions had been advertised as "Plasma TVs." *Id.* ¶ 40. Television manufacturers did not, however, specify that these LCD televisions used CCFL backlighting or advertise them as "CCFL TVs." *Id.* After the development of LED backlighting technology for LCD televisions, many companies produced both CCFL-lit and LED-lit LCD televisions. *Id.* ¶ 42. Television manufacturers, including Best Buy, continued to market and advertise the LCD televisions with CCFL backlighting as "LCD TVs." The LCD televisions with LED backlighting,

however, were initially marketed by these companies as "LED-LCD TVs" or "LED-backlit LCD TVs." *Id.* ¶¶ 40–43. Although many manufacturers trumpeted the alleged benefits of the LED backlighting, LED-lit LCD TVs did not sell well because they were priced higher than the CCFL-lit LCD TVs. *Id.* ¶ 42.

At some point, Plaintiff alleges that the majority of television manufacturers, including Best Buy, stopped using the descriptions "LED-LCD" or "LED-backlit" to describe their LCD televisions with LED backlighting. Instead, television manufacturers began marketing these televisions as simply "LED TVs." *Id.* ¶ 44. These marketing changes were made, according to Plaintiff, on Best Buy's website, product manuals, user guides, and product packaging. *Id.* For example, Plaintiff states that Best Buy's Insignia television cartons refer to the televisions as "LED TVs" but do not indicate that these televisions utilize LCD displays. *Id.* ¶ 45.

This marketing change, according to Plaintiff, had immediate and dramatic results. Specifically, before television manufacturers changed their marketing strategy, CCFL-lit LCD TVs accounted for over 97% of sales of televisions with LCD displays. *Id.* ¶ 46. Today, however, LED-lit LCD TVs are now the most popular flat-screen technology according to Plaintiffs. *Id.* Plaintiff also states that by marketing the LED-lit LCD TVs as simply an "LED TV," Best Buy was able to charge consumers a price premium for these televisions. *Id.* ¶ 59.

**D.      The present litigation**

Plaintiff, a citizen of Massachusetts, purchased an Insignia-brand television (model number NS-65D260A13) for personal use on January 17, 2013 at a Best Buy store in Davners, Massachusetts. *Id.* ¶ 7. Plaintiff alleges that when he was considering purchasing this television, there were three flat panel television options advertised: "Plasma TVs," "LCD TVs," and "LED

TVs." *Id.* Plaintiff claims that he chose an "LED TV" "because of and in reliance on Best Buy's marketing assertions on the carton containing the television that it was in fact an 'LED TV.'" *Id.*

Plaintiff alleges that he was misled into believing he was purchasing a television with an LED display instead of a television with a liquid crystal display like the television he actually received. *Id.* ¶ 60. Plaintiff claims that he had no knowledge that the television he purchased in fact had an LCD display, and he relied upon Best Buy's representations that the television he was purchasing had an LED display. *Id.* ¶¶ 60–61. According to Plaintiff, he would not have purchased, or he would have paid less for, his television had it not been advertised as an "LED TV." *Id.* ¶ 61.

Plaintiff's Amended Complaint asserts two causes of action. First, Plaintiff claims that Best Buy's advertising practices in calling an LED-lit LCD TV an "LED TV" violated Minnesota's Unfair Trade Practices Act (Minn. Stat. § 325D.9 *et seq.*), Minnesota's Prevention of Consumer Fraud Act ("CFA") (Minn. Stat. § 325F.68 *et seq.*), and Minnesota's Uniform Deceptive Trade Practices Act ("DTPA") (Minn. Stat. § 325D.43 *et seq.*). *Id.* ¶¶ 73–86. Second, Plaintiff claims that these advertising practices violated Massachusetts General Laws chapter 93A, sections 2 and 9. *Id.* ¶¶ 87–98.

> Plaintiff purports to represent an alleged nationwide class defined as follows:
>
> All persons who purchased, for personal use and not re-sale, within the United States within the four years (or other applicable statute of limitations period) preceding the filing of this Complaint up through any trial of this matter, an Insignia-brand LED-lit LCD television that is sold in a box that describes the television as an LED TV or LED HDTV or LED television.

*Id.* ¶ 63. Alternatively, or in addition, Plaintiff purports to represent an alleged subclass of Massachusetts residents:

> All persons who purchased, for personal use and not re-sale, within the State of Massachusetts within the four years (or other applicable statute of limitations period)

preceding the filing of this Complaint up through any trial of this matter, an Insignia-brand LED-lit LCD television that is sold in a box that describes the television as an LED TV or LED HDTV or LED television.

*Id.* ¶ 64. Neither of the proposed classes have been certified at this point.

Plaintiff seeks an injunction prohibiting Best Buy from advertising LED-lit LCD TVs as "LED TVs," "LED HDTVs," or "LED televisions." ECF No. 34 at 36. Plaintiff also seeks an order requiring Best Buy to (1) re-label or recall all new LED-lit LCD TVs that do not clearly state that the television is an LCD TV with LED backlighting, and (2) engage in a corrective advertising campaign that informs the public that "LED TVs" are actually LCD TVs with LED backlighting. *Id.* Finally, Plaintiff seeks monetary damages for the alleged price premium he was required to pay for the television. *Id.*

### E.      Best Buy's Motion to Dismiss

Best Buy has now moved to dismiss Plaintiff's Amended Complaint. *See* Mot. to Dismiss, ECF No. 16. First, Best Buy argues that this Court does not have subject matter jurisdiction over certain claims made against Best Buy because Plaintiff lacks standing to (1) assert claims related to products he never purchased or advertising he never saw; (2) seek injunctive relief; and (3) assert Minnesota statutory claims. *See generally* Mem. in Supp. of Mot. to Dismiss, ECF No. 18. Additionally, Best Buy argues that (1) Plaintiff's claims for fraud do not satisfy Rule 9(b)'s heightened pleading standard; (2) Plaintiff does not plausibly allege consumer fraud or a price premium injury; and (3) Plaintiff cannot seek damages under the DTPA because he has not properly invoked the private attorney general statute. *Id.* Plaintiff opposes this motion. *See generally* ECF No. 35. The Court addresses each of Best Buy's arguments below.

## II. STANDARD OF REVIEW

A.      **Rule 12(b)(1) Motion to Dismiss**

The jurisdictional power of federal courts is defined by Article III of the Constitution. Because federal courts are not courts of general jurisdiction, the issue of subject matter jurisdiction may be raised at any time. *See* Fed. R. Civ. P. 12(b)(1); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (stating that subject matter jurisdiction may never be forfeited or waived). Indeed, a federal court has a "special obligation" to satisfy itself of its own jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). If subject matter jurisdiction is lacking, the court must dismiss the action. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

A motion attacking the Court's subject matter jurisdiction is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion to dismiss can either (1) attack the complaint's claim of jurisdiction on its face or (2) attack the factual basis for jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A facial challenge to subject-matter jurisdiction argues that factual allegations made in a complaint—even if truthful—are insufficient to establish jurisdiction. *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1073 (D. Minn. 2001). When analyzing a facial challenge to jurisdiction, the Court considers the pleadings alone. *Id*. In contrast, "[w]here a defendant mounts a 'factual attack' on the plaintiff's complaint, 'the court considers matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards' in that the court may not presume the factual allegations in the plaintiff's complaint are true." *Rector v. State Farm Mut. Ins. Co.*, 392 F. Supp. 2d 1069, 1071 (W.D. Mo. 2005) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

B.      **Rule 12(b)(6) Motion to Dismiss**

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the

complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

### III. LEGAL ANALYSIS

**A.    Subject Matter Jurisdiction**

### 1.    Standing to assert claims for products which Plaintiff did not purchase and advertising which Plaintiff did not see.

Best Buy first argues that this Court does not have subject matter jurisdiction over Plaintiff's claims relating to products he did not purchase and advertising he did not see or rely on. ECF No. 18 at 9. Specifically, although Plaintiff alleges that he only purchased a single model of Insignia

television (model NS-65D206A13), his Complaint challenges the marketing of *all* Insignia LED televisions, including models that he never saw or purchased. *Id.* Similarly, Best Buy argues that although Plaintiff alleges that he only relied on Best Buy's marketing assertions on the carton of the television that he purchased, *see* ECF No. 34 ¶¶ 7, 61, Plaintiff purports to challenge advertising statements in a variety of marketing materials that he did not see, including Best Buy's website and online videos, product manuals, newspaper and magazine advertisements, and point-of-sale display materials. ECF No. 34 ¶¶ 44–51. According to Best Buy, Article III of the U.S. Constitution does not allow Plaintiff to assert claims based on products he never purchased and advertisements that he never saw or relied upon. ECF No. 18 at 9.

In response, Plaintiff claims that the different models of Insignia televisions are not different products, but essentially different sizes of the same product. ECF No. 35 at 7. Additionally, Plaintiff asserts that purchasers in false advertising cases have standing to represent other purchasers of similar or related protects who were victimized by the same false advertising and labeling. *Id.*

"A plaintiff has the burden of establishing subject matter jurisdiction, for which standing is a prerequisite." *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006). As explained by the Eighth Circuit:

> To establish standing, a plaintiff is required to show that he or she had "suffered an injury in fact, meaning that the injury is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Second, the injury must be traceable to the defendant's challenged action. Third, it must be "likely" rather than "speculative" that a favorable decision will redress the injury.

*Id.* (quoting *S.D. Farm Bureau, Inc. v. Hazeltin*, 340 F.3d 583, 591 (8th Cir. 2003)).

Best Buy relies on *Chin v. General Mills, Inc.*, No. 12-2150 (MJD/TNL), 2013 WL 2420455 (D. Minn. June 3, 2013), to support its claim that Plaintiff lacks standing to assert claims for

products he never purchased or advertising he never saw or relied on. ECF No. 18 at 11. In *Chin*, the plaintiffs filed a putative class action against General Mills claiming that although General Mills marketed its Nature Valley granola bars as "100% natural," these products were not "natural" because they contained high fructose corn syrup, high maltose corn syrup, and Maltodextrin. 2013 WL 2420455, at *1. The complaint alleged, among other things, that this marketing practice violated Minnesota's consumer protection laws, New York's unfair and deceptive business practices law, New York's false advertising law, and New Jersey's consumer fraud act. *Id.* at *2. Plaintiffs sought to represent a class of "all persons in the United States who . . . purchased Nature Valley products that contained high fructose corn syrup or high maltose corn syrup or Maltodextrin and were packaged, labeled, marketed, or advertised as being '100% Natural.'" *Id.*

General Mills produced, marketed, and sold the following Nature Valley products: "Protein Chewy Bars," "Chewy Trail Mix Granola Bars," "Yogurt Chewy Granola Bars," "Sweet & Salty Nut Granola Bars," and "Granola Thins." *Id.* at *1. General Mills filed a motion to dismiss for lack of standing, arguing that the court did not have subject matter jurisdiction over claims relating to Nature Valley products the plaintiffs did not purchase. *Id.* Specifically, General Mills maintained that the plaintiffs lacked Article III standing to seek relief for the alleged false representations made on "Protein Chewy Bars" and "Yogurt Chewy Granola Bars" because nowhere in the complaint had the plaintiffs alleged that they ever purchased these products. *Id.* at *3. Finding that none of the named plaintiffs purchased the "Protein Chewy Bars" or "Yogurt Chewy Granola Bars," the court agreed with General Mills and held that plaintiffs lacked standing to assert claims relating to these two types of Nature Valley granola bars. *Id.* In doing so, the court stated, "The named plaintiffs in a class action may not rely on injuries that the putative class may have suffered, but instead must

11

allege that they personally have been injured." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)

("That a suit may be a class action . . . adds nothing to the question of standing, for even named

plaintiffs who represent a class must allege and show that they personally have been injured, not that

injury has been suffered by other, unidentified members of the class to which they belong and which

they purport to represent."); *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 863 (D. Minn. 2012)

("A class representative must have standing to assert claims on his or her own behalf in order to

have standing to assert claims as a class representative.")).Therefore, the court dismissed all counts

of the plaintiffs' complaint to the extent the plaintiffs sought relief relating to "Protein Chewy Bars"

and "Yogurt Chewy Granola Bars." *Id.* at *4.

The Court finds *Chin* directly applicable to the present case. Here, Plaintiff seeks to represent

a nationwide class defined as "all persons who purchased, for personal use and not for re-sale, . . .

an Insignia-brand LED-lit LCD television that is sold in a box that describes the television as an

LED TV or LED HDTV or LED television." ECF No. 43 ¶ 63. In other words, Plaintiff seeks to

challenge Best Buy's marketing practice on *all* Insignia-brand LED-lit LCD televisions, even though

Plaintiff admits that he only purchased one single model of television.

Plaintiff argues that *Chin* is distinguishable from the present case because different models

of a television are not separate products, but "basically different sizes of the same product." ECF

No. 35. The Court disagrees. Specifications other than simply screen size differ between television

models. For example, LED-lit LCD televisions have many specifications that vary from model to

model, such as screen resolution (e.g., 720p or 1080p), refresh rate (e.g., 60hz or 120hz), contrast

ratio, whether a television can connect to the internet (i.e., a "Smart TV"), or whether the television

offers three-dimensional support (i.e., a "3D TV"). Indeed, Plaintiff acknowledges in his Amended

Complaint that televisions have a "plethora" of output specifications (e.g., contrast, refresh rate, color space). ECF No. 34 ¶ 58. Therefore, this Court finds that there are many more distinguishing characteristics between models of televisions than simply size as Plaintiff claims.

Plaintiff additionally argues that unlike *Chin*, the alleged claims of misrepresentation and false advertising applies to the "essential nature and identity" of a television, rather than to some "peripheral aspect" of the product. ECF No. 35. However, the Court finds no real distinction between marketing an LED-lit LCD television as an "LED TV" and marketing a granola bar that contains high fructose corn syrup as a "100% Natural" granola bar. Both representations affect what type of product the consumer believes he or she is purchasing; namely, the type of television or the type of granola bar. Thus, Plaintiff's attempt to distinguish *Chin* is misplaced.

Finally, Plaintiff cites multiple cases for the proposition that a class representative has standing to assert claims on behalf of the class as a whole when "there is sufficient similarity between the products purchased and not purchased." *See, e.g.*, *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); *see also* ECF No. 35 at 7–9 (citing cases). However, Plaintiff has not directed this Court to any applicable case law from either the Eighth Circuit or the District of Minnesota supporting his contention. Indeed, most of the cases cited by Plaintiff are from various federal district courts throughout California or New York. *See* ECF No. 35 at 8–9 (citing, among other cases, *Bruno v. Quten Research Inst.*, 280 F.R.D. 524 (C.D. Cal. 2011); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012); *In re Frito-Lay N. Am. All Natural Litig.*, No. 12-md-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)). And, as recent as 2012, at least one federal district court in California has admitted that courts have diverged on the question of whether a named plaintiff has standing to sue on behalf of purchasers

of a product that he or she did not actually purchase. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921–22 (N.D. Cal. 2012). Additionally, there are numerous other courts that have decided this issue consistent with the *Chin* decision. *See, e.g.*, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C-10-1044, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) (dismissing claims for products the plaintiff did not purchase for lack of standing); *Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) (holding that the plaintiff "cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon"); *Henry v. Perdue Farms, Inc.*, No. 11-888, 2011 WL 6002463 (D.N.J. Nov. 20, 2011) (dismissing claims with prejudice as to products that named plaintiff did not purchase); *Lieberson v. Johnson & Johnson Consumer Co.*, 865 F. Supp. 2d 529 (D.N.J. 2011) (same).

Although this Court acknowledges the diverging case law from courts around the country as to the issue of whether Plaintiff has standing to assert claims for products he did not in fact purchase, the Court finds no reason to divert from this District's reasoning in *Chin*. Accordingly, the Court concludes that Plaintiff lacks standing to assert claims on behalf of the class for televisions that he did not purchase or advertising that he did not see or rely upon. *See also Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."). Therefore, the Court recommends that Best Buy's motion to dismiss be granted to the extent Counts I or II seek relief relating to products Plaintiff never purchased or advertising that Plaintiff never saw or relied upon. Specifically, Plaintiff's claims should be limited to Insignia-brand televisions with the model number NS-65D260A13 and for advertising and marketing on the television box itself.

## 2.    Standing to assert Minnesota statutory claims

Best Buy next argues that Plaintiff does not have standing to assert claims under Minnesota's Unfair Trade Practices Act, Prevention of Consumer Fraud Act, and Uniform Deceptive Trade Practices Act because Plaintiff did not suffer an injury in Minnesota. ECF No. 18 at 14–15. Conversely, Plaintiff maintains that he does have standing to assert claims under Minnesota state law because "Plaintiff has without question sustained an injury in fact caused by Best Buy's violation of the Minnesota statutes, which is redressable under those statutes." ECF No. 35 at 20. Plaintiff argues that the issue of whether he can assert claims under Minnesota state law is not one of standing, but whether the application of Minnesota law to claims against Best Buy on purchases that occurred outside Minnesota would violate the Due Process Clause of the U.S. Constitution. *Id.* at 21.

"[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2644 (ADM/SER), 2014 WL 943224, *11 (D. Minn. Mar. 11, 2014); *see also Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012) (finding that plaintiff lacked standing to assert claims under the laws of states other than Maryland where plaintiff was neither harmed by the product nor purchased the product in any state other than Maryland); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1027 (N.D. Cal. 2007); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011); *Smith v. Lawyers Title Ins. Corp.*, No. 07-12124, 2009 WL 514210, *3 (E.D. Mich. Mar. 2, 2009); *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 WL 2566132, *6 (D.N.J. June 6, 2014); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 156–58 (E.D. Pa. 2009).

Here, Plaintiff is a resident of Massachusetts, he purchased the product at issue at a Best Buy store in Massachusetts, and he supposedly relied on advertisements only in Massachusetts. ECF No. 34 ¶ 7. Plaintiff does not allege anywhere in his Amended Complaint that he suffered any injury in Minnesota. Accordingly, the Court concludes that lacks standing to bring his claims under Minnesota's consumer protection statutes. *See Jones*, 470 F.3d at 1265 (requiring that plaintiff suffer an injury in fact to have Article III standing). Thus, the Court recommends that Best Buy's motion to dismiss should be granted to the extent Plaintiff asserts claims under Minnesota's consumer protection statutes (Count I).

### 3.      Standing to assert claims for injunctive relief

Next, Best Buy contends that Plaintiff lacks standing to assert his claim for injunctive relief. ECF No. 18 at 12–14. Specifically, Best Buy argues that because Plaintiff is now fully aware of what Best Buy intends the term "LED TV" to mean, there is no future harm to Plaintiff that would be obviated by the requested injunction. *Id.* at 12. Conversely, Plaintiff states that simply because he now knows that the existing television he purchased is, in actuality, an LCD television, that does not mean that he will be able to determine in the future whether Insignia televisions sold as "LED TVs" are truly LED televisions or merely LED-lit LCD televisions. ECF No. 35 at 10. In other words, Plaintiff argues that "[i]f Best Buy is not enjoined from misrepresenting its televisions in the future, then Plaintiff and the Class cannot expect to get truthful answers from Best Buy to any inquiries they make about the nature of the televisions." *Id.*; *see also* ECF No. 34 ¶ 60 ("Plaintiff and the other members of the Class also face threatened harm or injury in the future if Best Buy is not enjoined from continuing to misrepresent Insignia LED-backlit LCD TVs as LED TVs, because Plaintiff and the other members of the Class lack the knowledge and expertise to determine from designations on

16

the box whether the television inside is really an LED TV or merely an LED-backlit LCD TV, or for that matter from looking at the television itself.").

Massachusetts General Laws chapter 93A[3] explicitly allows for both the recovery of monetary damages and equitable relief. Mass. Gen. Laws ch. 93A § 9(3) ("In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper."). After reviewing the arguments of both parties, the Court concludes that it is premature to dismiss Plaintiff's claim for injunctive relief at this time. Plaintiff should be allowed to conduct discovery to attempt to uncover evidence showing that he may be harmed in the future by Best Buy's alleged misrepresentations. *See Gardner v. Fist Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) ("Plaintiffs must advance *record evidence* sufficient to support an inference of future harm to Plaintiffs." (emphasis in original)). Although Best Buy has cited some case law in support of its position that an injunction is not appropriate, the Court finds such cases distinguishable as they were decided at the summary judgment stage and were based on the fact that the plaintiff could not present any evidence to show he would be harmed in the future. *See, e.g.*, *Damon v. Groteboer*, 937 F. Supp. 2d 1048 (D. Minn. 2013) (finding injunction not appropriate because plaintiffs did not present any "evidence that they face[d] any risk of future harm to themselves"); *Buetow v. A.L.S. Enters., Inc.*, 713 F. Supp. 2d 832, 843 (D. Minn. 2010) (granting summary judgment on plaintiffs' claim for injunctive relief as "there [was] no evidence indicating a risk of future harm to Plaintiffs"), *rev'd on other grounds by* 888 F. Supp. 2d 956 (8th Cir. 2012). Although Best Buy may have an argument that Plaintiff's claim for injunctive relief should be

---

[3]       Because the Court has determined that Plaintiff does not have standing to assert his claims under Minnesota law, the Court declines to address Best Buy's arguments regarding standing to assert a claim for injunctive relief under Minnesota law.

17

dismissed at the summary judgment stage if Plaintiff is unable to present any evidence that he will be harmed in the future, the Court concludes that Plaintiff has alleged sufficient facts to survive a motion to dismiss at this stage of the litigation.

Additionally, at least one court has addressed this identical issue and denied the defendant's motion to dismiss for lack of standing. In *Pierce-Nunes v. Toshiba America Information Systems, Inc.*, No. 14-cv-7242, Dkt. No. 70 (C.D. Cal. Jan. 8, 2015), a plaintiff filed suit alleging the same basic allegations in the present case; namely, that the defendant falsely marketed and advertised its LED-lit LCD televisions as "LED TVs." The defendant, Toshiba, brought a motion to dismiss the plaintiff's claim for injunctive relief for lack of standing, arguing that the plaintiff would not be deceived by Toshiba's marketing in the future. Like the present case, the plaintiff argued that the harm she faced was the lack of assurance that she could shop in the future without needing to second guess Toshiba's representations. The court held that the fact plaintiff discovered the deception does not render the advertising any more truthful, and found that the plaintiff could not rely on Toshiba's representations with any confidence. *Id.* at 4. Thus, the court found that plaintiff had alleged a sufficient threat of imminent injury to establish Article III standing. *Id.*

Based on the foregoing, the Court determines that it is premature to dismiss Plaintiff's claim for injunctive relief at the motion to dismiss stage, before any fact discovery has begun. Accordingly, to the extent Best Buy seeks to dismiss Plaintiff's claim for injunctive relief, the Court recommends that the motion be denied.

**B.**      **Sufficiency of First Amended Complaint Under Rule 9 of the Federal Rules of Civil Procedure**

Best Buy next argues that because Plaintiff's claims are grounded in fraud, they must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. ECF No. 18 at 16.

According to Best Buy, Plaintiff's Amended Complaint fails to meet this standard. ECF No. 44 at 9–11. Contrastingly, Plaintiff argues that its Amended Complaint sufficiently complies with Rule 9(b). ECF No. 35 at 25.

Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A pleading which alleges fraud or mistake must identify "who, what, where, when and how." *Bank of Montreal v. Avalon Capital Grp., Inc.*, 743 F. Supp. 2d 1021, 1028 (D. Minn. 2010) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997)). "The purpose of Rule 9(b) is to provide the defendant with notice of and a meaningful opportunity to respond specifically to charges of fraudulent conduct by apprising the defendant of the claims against it and the facts upon which the claims are based." *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2013 WL 3717743, at *6 (D. Minn. July 15, 2013) (citing *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)). The Court finds that this heightened pleading standard applies to Plaintiff's remaining claim under Massachusetts law. *See Hallal v. Vicis Capital Master Fund Ltd.*, No. 12-10166, 2013 WL 1192384, *14–15 (D. Mass. Feb. 25, 2013) (applying Rule 9(b) to Mass. Gen. Laws ch. 93A).

Plaintiff's Amended Complaint alleges: (1) Plaintiff purchased an Insignia-brand television (model number NS-65D260A13) at a Best Buy store in Danvers, Massachusetts, on January 17, 2013 (¶ 7); (2) when deciding which television to purchase, Plaintiff considered televisions advertised as "Plasma TVs," "LCD TVs," and "LED TVs" (¶ 7); (3) Plaintiff selected an "'LED TV' model because of and in reliance on Best Buy's marketing assertions on the carton containing the television that it was an 'LED TV'" (¶ 7); (4) Plaintiff had no knowledge that the television he purchased was in fact an LCD TV (¶ 60); (5) Plaintiff relied upon Best Buy's representations on the

television's carton that the television he purchased was an LED TV (¶ 61); and (6) Plaintiff lacked the knowledge and expertise to determine from designations on the box whether the television was really an LED TV or merely an LED-lit LCD TV (¶ 60). The Court finds that these allegations in Plaintiff's First Amended Complaint are not merely conclusory—rather, the allegations provide Best Buy with sufficient information as to the fraudulent conduct alleged by Plaintiff. *See Commercial Prop. Invs., Inc.*, 61 F.3d at 644 ("Because one of the main purposes of [Rule 9(b)] is to facilitate a defendant's ability to respond to and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."). Plaintiff's Amended Complaint adequately informs Best Buy of what product Plaintiff purchased, where the product was purchased, what Plaintiff believed he was purchasing, and how Plaintiff was allegedly deceived by Best Buy's advertising. Accordingly, the Court concludes that Plaintiff's First Amended Complaint meets the heightened pleading requirement of Rule 9(b).

Therefore, to the extent Best Buy seeks to dismiss Plaintiff's First Amended Complaint for failure to satisfy Rule 9(b), the Court recommends that Best Buy's motion should be denied.

## C.    Plausible Allegations of Fraud

Best Buy next argues that Plaintiff's causes of action should be dismissed under *Twombly* and *Iqbal* because "there are no plausible allegations that the 'LED TV' classification is likely to deceive a substantial portion of reasonable customers." ECF No. 18 at 18. Specifically, Best Buy claims that it is undisputed that LED-lit LCD televisions use LED technology, and that Plaintiff has failed to allege any facts that support his conclusion that consumers who purchased an "LED TV" actually believed they were purchasing something other than an LCD television with LED backlighting. *Id.* at 18–19.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a "short plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require "detailed factual allegations," but a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Massachusetts General Laws chapter 93A § 2[4] states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws. ch. 93A, § 2(a) (2014). Section 9 of chapter 93A permits any consumer injured by a violation of § 2 to bring a civil action for damages and for injunctive relief. *Id.* § 9(1) ("Any person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two . . . may bring an action in the superior court . . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."). The Supreme Judicial Court of Massachusetts has stated that "an advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004). Similarly, the Massachusetts Civil Jury Instruction Guides

---

[4] The Court only addresses Plaintiff's claims under Massachusetts law as it previously concluded that Plaintiff's claims under Minnesota law should be dismissed.

indicate that the phrase "unfair or deceptive" is "broad and flexible." 2 Mass. Superior Ct. Civ. Prac. Jury Inst. § 16.4.1 (citing *Commonwealth v. DeCotis*, 316 N.E.2d 748, 754 (Mass. 1974)). Additionally, the guides state that "[a] 'deceptive' act or practice is simply one that has the capacity to deceive. An act or practice is deceptive if it could reasonably cause a person to act differently from the way [he/she] would act if [he/she] knew the truth about the matter." *Id.* § 16.4.2 (citing *Sargent v. Koulisas*, 560 N.E.2d 569, 571 (Mass. App. Ct. 1990)). Thus, in order to survive a motion to dismiss, Plaintiff's Amended Complaint must plausibly allege that Best Buy's advertising and labeling was either unfair or deceptive.

Plaintiff alleges in his First Amended Complaint that the television Plaintiff purchased, which was manufactured and marketed by Best Buy, was falsely advertised as an "LED TV." ECF No. 34 ¶ 7. However, according to Plaintiff, these televisions were not in fact "LED TVs," but were "LCD TVs that use light emitting diodes (LEDs) instead of cold cathode fluorescent lights (CCFLs) to light the liquid crystal display (LCD) panel." *Id.* ¶ 3. As stated above, Plaintiff claims that when LCD televisions were first introduced, they used CCFL backlighting and were advertised simply as "LCD TVs," not "CCFL TVs." *Id.* ¶ 40. Additionally, when Best Buy introduced its first LCD television with LED backlighting, it advertised this as an "LED-LCD TV." *Id.* ¶ 41. This initial advertising of LED-lit LCD televisions, according to Plaintiff, was not deceptive because "no effort was made to conceal that these televisions utilized liquid crystal displays." *Id.* ¶ 43. However, due to low sales, Plaintiff alleges that Best Buy changed its marketing strategy and began advertising its LCD televisions with LED backlighting as simply an "LED TV." *Id.* ¶ 44. The cartons containing the televisions, however, did not indicate that the televisions still in fact had an LCD screen. *Id.* ¶ 45. According to Plaintiff, advertising a television as an "LCD TV" accurately describes the

applicable display technology, while advertising an LCD television as an "LED TV" misleadingly identifies only the light source, thus falsely implying that LED, not LCD, is the display technology. *Id.* ¶ 50. Therefore, Plaintiff claims that "Best Buy's failure to disclose that its references to LED refer to the light source that illuminates the LCD panel, instead of the display technology itself, and its nondisclosure and concealment that each of the televisions is otherwise functionally identical to televisions that are advertised and sold as 'LCD TVs,' were at all times knowing, intentional, and intended to mislead consumers." *Id.* ¶ 4.

Best Buy argues that these allegations do not plausibly allege that its "LED TV" advertising would tend to deceive reasonable consumers. ECF No. 44 at 11. Additionally, Best Buy argues that although Plaintiff claims that the term "LED TV" implies to reasonable consumers that LED, not LCD, is the display technology, "Plaintiff has yet to plausibly support this claim." *Id.* at 12. Specifically, Best Buy states that Plaintiff "does not identify any contextual statements on the packaging or otherwise indicating that the term 'LED' refers to the composition of the screen and not the backlighting . . . technology used to illuminate the display." *Id.* Additionally, Best Buy argues that Plaintiff's interpretation of the term "LED TV" is directly contradicted by both the television's product manual and the product web page, which both indicate that the display of an "LED TV" is an LCD panel. ECF No. 18 at 21–22.

The Court concludes that Plaintiff's Amended Complaint alleges a plausible claim that Best Buy's advertising and marketing violated Massachusetts law sufficient to survive a motion to dismiss. Accepting Plaintiff's allegations as true, Best Buy first produced an Insignia-brand television with an LCD display and CCFL backlighting and marketed it as an "LCD TV." Best Buy then produced an Insignia-brand television with an LCD display and LED backlighting and

23

marketed it as an "LED-LCD TV." When that marketing was unsuccessful, Best Buy began advertising the same television with an LCD display and LED backlighting as an "LED TV." However, according to Plaintiff, the boxes containing the "LED TVs" did not indicate that the televisions contained therein still used a liquid crystal display. The Court finds that based on these allegations, it is plausible that Best Buy's marketing and advertising strategy had the capacity to cause a person to act differently from the way he or she otherwise would have acted. *See Aspinall*, 813 N.E.2d at 488 (stating that "an advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted."). Although Best Buy argues that no reasonable consumer could have been misled by it referring to an LED-lit LCD television as simply an "LED TV,"[5] the reasonableness of what consumers understand "LED TV" to mean is not for this Court to determine at this stage. Instead, the Court simply considers the allegations in the Complaint to determine whether the plaintiff has plausibly alleged a claim for relief.

Therefore, to the extent Best Buy's motion seeks to dismiss Plaintiff's Complaint for failure to meet *Twombly*'s plausibility standard, the Court recommends that the motion be denied.

**F.     "Price premium" injury**

---

[5]      The main basis for Best Buy's claim that no reasonable consumer could have understood an "LED TV" to mean a television with an LED display (rather than a liquid crystal display) is because the television's product manual and an online video on the television's web page specifically stated that the display was LCD. ECF No. 18 at 21. However, these advertising forms are not at issue because Plaintiff did not allege that he ever saw or relied on those advertisements. Because claims based on advertisements Plaintiff did not see were dismissed in Part A of this Report and Recommendation, the Court only considers advertisements Plaintiff actually saw or relied upon; namely, those advertisements on the television's carton. Nothing on the television's carton indicated that the display was LCD.

Finally, Best Buy argues that "Plaintiff's claims for damages should also be dismissed because he has not plausibly alleged any injury that was caused by the alleged misrepresentation." ECF No. 18 at 23. Specifically, Best Buy maintains that although Plaintiff states he and others were required to pay a "price premium" for the LED-lit LCD televisions they purchased based on the fact they were advertised as an "LED TV," Plaintiff has not offered any facts to support this claim. *Id.* at 24. The Court disagrees.

Plaintiff's First Amended Complaint contains the following allegations of a "price premium" injury:

- "Best Buy's deceptive marketing practices have allowed it to charge a premium for the Insignia LED-lit LCD TVs that it has misrepresented as LED TVs. At all times, Best Buy's Insignia brand LED-lit LCD TVs have been priced higher than its otherwise comparable CCFL-lit LCD TVs." ECF No. 34 ¶ 59.
- "Plaintiff would not have purchased or would have paid less for his television had the television not been falsely and deceptively advertised or had he known the truth." *Id.* ¶ 61.
- "In the absence of Best Buy's deceptive advertising, Plaintiff and other consumers would instead have purchased a comparable model CCFL LCD TV from Best Buy or another manufacturer at a lower price, or would have paid less for the falsely marketed and advertised 'LED TV' Insignia brand models that they purchased from Best Buy." *Id.* ¶ 52
- "Best Buy has falsely advertised the televisions to increase sales and profits. Best Buy would not have been able to charge the premium it has charged for its Insignia brad 'LED TVs' if it had accurately advertised them as LCD TVs or LED-lit LCD TVs." *Id.* ¶ 53.
- "Best Buy has used and continues to use this deception . . . to charge a premium for such televisions that Plaintiff and other consumers would not have paid had the televisions been accurately labeled and described." *Id.* ¶ 5
- "Best Buy has perpetrated a massive consumer fraud upon thousands of unsuspecting purchasers, each of whom paid an unsupported premium for a deceptively labeled 'LED TV,' and on whose behalf Plaintiff brings this action to recover such premium and for other appropriate relief." *Id.* ¶ 6.

The Massachusetts Supreme Judicial Court discussed the appropriate measure for damages in claims arising under Massachusetts General Laws chapter 93A in *Aspinall v. Philip Morris Cos.*,

813 N.E.2d 476, 490–91 (Mass. 2004). In *Aspinall*, the plaintiffs brought suit under chapter 93A, alleging that the defendant mislead the public into believing that their product, Marlboro Lights, would deliver lower levels of tar and nicotine compared to other cigarettes. *Id.* at 479. As to damages, the plaintiffs alleged that "as a result of the defendants' deceptive advertising, all consumers of Marlboro Lights in Massachusetts paid more for the cigarettes than they would have otherwise paid." *Id.* at 490. The plaintiffs expected to offer proof at trial that the amount that all purchasers of Marlboro Lights paid for the cigarettes exceeded their true market value (i.e., what purchasers would have paid had they known the truth). *Id.* Thus, the plaintiffs argued that "the correct model for measuring actual damages is the difference between the price paid by the consumers and the true market value of the 'misrepresent[ed]' cigarettes they actually received." *Id.* The Massachusetts Supreme Judicial Court agreed that these "benefit of the bargain" damages, if proved with reasonable certainty, would be appropriate in that case. *Id.* Additionally, the court acknowledged that even if plaintiffs were unsuccessful in their attempt to prove actual damages, they would still be entitled to recover statutory damages. *Id.* at 490–91 (citing Mass. Gen. Laws ch. 93A § 9(3) ("[I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater . . . .")).

The Court finds that the damages alleged by Plaintiff in the present case are essentially the same as those alleged in *Aspinall*. Plaintiff's First Amended Complaint makes clear that as a result of Best Buy's alleged deceptive advertising, Plaintiff claims he paid more for his television than he otherwise would have paid. Thus, Plaintiff seeks to receive the difference between the price consumers paid for the alleged falsely advertised televisions and the true market value of the television he actually received.

Best Buy argues that Plaintiff cannot plausibly support his price premium injury claim because Plaintiff makes no allegations that either (1) the Insignia-brand televisions with the "LED TV" labeling were priced any higher than comparable LED-lit LCD televisions that did not have the accused deceptive labeling or (2) that Best Buy's switch from the "accurate" "LED-lit LCD TV" labeling to "LED TV" labeling inflated the prices being charged for those products. ECF No. 18 at 25. In other words, Best Buy claims that Plaintiff cannot plausibly allege any injury because the price Best Buy charged for its LED-lit LCD televisions was the same both prior to and after it began its allegedly deceptive marketing practice. *Id.* Additionally, Best Buy contends that Plaintiff's price premium injury compares apples to oranges; namely, it compares the prices of LED-lit LCD televisions with CCFL-lit LCD televisions. *Id.* These products, however, are different according to Best Buy, and thus the difference in price between the two products has nothing to do with the complained of "LED TV" marketing. *Id.*

What Best Buy fails to realize, however, is that Plaintiff's argument is not simply that Best Buy was able to charge a higher price for its televisions after it began its allegedly deceptive advertising and marketing, but rather that this deceptive advertising allowed Best Buy to convince the general public that these LED-lit LCD televisions had a higher market value than they really did. Indeed, Plaintiff explicitly contends in his Amended Complaint that "[t]here is nothing about LED-lit LCD TVs that renders them inherently superior (or inferior) to CCFL-lit LCD TVs." ECF No. 34 ¶ 58. Plaintiff specifically alleges that although Best Buy was unable to sell very many LED-lit LCD televisions prior to the allegedly deceptive advertising and marketing, Best Buy's sales of these televisions dramatically increased after Best Buy began its allegedly deceptive marketing. *Id.* ¶¶ 43–46. In other words, although the price for the Insignia-brand LED-lit LCD televisions may not

have increased after the allegedly deceptive marketing began, Plaintiff contends its market value was something below the price Best Buy was charging to begin with. According to Plaintiff, the deceptive advertising allowed Best Buy to begin selling a multitude of LED-lit LCD televisions at a price higher than it would have been able to had it not engaged in the allegedly deceptive marketing. Under Chapter 93A, if Plaintiff's allegations prove to be true, Plaintiff is entitled to recover the difference between the price he paid and the true market value of the television.

The Court finds that Plaintiff's Amended Complaint adequately alleges a price premium injury; specifically, that he paid more for the television than it was actually worth. Whether Plaintiff will ultimately be successful in proving actual damages, however, is a matter for the fact finder, not the Court at the motion to dismiss stage. Accordingly, to the extent Best Buy seeks to dismiss Plaintiff's Amended Complaint for failing to state an injury that was caused by Best Buy's alleged misrepresentations, the Court recommends that the motion should be denied.[6]

### IV. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Best Buy's motion to dismiss (ECF No. 16) be **GRANTED in part** and **DENIED in part** as follows:

1.  To the extent Best Buy seeks to dismiss Plaintiff's claims under the Minnesota Unfair Trade Practices Act, the Minnesota Prevention of Consumer Fraud Act, and the Minnesota Uniform Deceptive Trade Practices Act (Plaintiff's First Cause of Action), the motion should be **GRANTED** and Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** for lack of standing.

---

[6]     Although Best Buy also makes an argument in its briefing that Plaintiff's Minnesota DTPA claim should be dismissed because Plaintiff did not properly invoke the private attorney general statute, *see* ECF No. 18 at 33, this Court declines to address the argument as the Court has recommended dismissing all of Plaintiff's Minnesota statutory claims for lack of standing.

2.      To the extent Best Buy seeks to dismiss all of Plaintiff's claims for products he did not purchase and advertising he did not see, the motion should be **GRANTED** and Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** for lack of standing. Specifically, Plaintiff's claims should be limited to televisions with the model number NS-65D260A13 and for advertising and marketing on the television box itself.

3.      To the extent Best Buy seeks to dismiss Plaintiff's claim for injunctive relief, the motion should be **DENIED**.

4.      To the extent Best Buy seeks to dismiss Plaintiff's claims for failure to adequately plead allegations of fraud, the motion should be **DENIED**.

5.      To the extent Best Buy seeks to dismiss Plaintiff's claims for failing to plausibly allege a price premium injury, the motion should be **DENIED**.

DATED: March 13, 2015                                        s/Franklin L. Noel
                                                            FRANKLIN L. NOEL
                                                            United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 1, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **April 1, 2015,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.